(Hamilton County Court of Common Pleas.)

John S. Thompkins and others, Trustees of the Mission of the Good Shepherd, an Episcopal Church of Norwood *v.* The Village of Norwood.

---

The assessable frontage of a triangular corner lot (platted and used as per attached exhibit) does not exceed the length of its base or rear line on its greatest breadthwise frontage.

(Decided October 30, 1894.)

Buchwalter, J.

This case raises the question of assessable frontage on Ashland avenue, upon the triangular lot indicated by the annexed plat, composed of lot 51 and part of lot 52. Ashland avenue is the hypothenuse of a right-angled triangle, of which Monroe avenue is the perpendicular, and the rear line A–C is the base.

The church has its architectural and main entrance front obliquely toward the diagonal line of Ashland avenue. The cement walks lead from Ashland and Monroe avenues to the front door. There are windows on either side, but no doors. There are two rear doors, accessible by a cement walk from Monroe avenue, for the use of the Rector and choir. The rear wall of the church is on the back line of the triangular lot No. 51. The steps and the cement walk to them are on the twenty-foot strip of lot 52.

The two lots are used and occupied as one lot. The total length of the Monroe avenue line is 144.30; of the Ashland avenue line is 195.67 feet, and

of the rear line, or base line, is 132.13 feet. It is estimated that more pa-
trons of the church enter from Monroe than Ashland avenue.

A corner lot in its ordinary form, a parallelogram, improved according-
ly, with its front on the shorter side, has an assessable front equal to its
actual width, whether the street improvement be upon the side street or
its actual front street.

In *Haviland* v. *City of Columbus*, 50 Ohio St. 471, the court held: "In as-
sessing the cost of a street improvement on abutting property by the front
foot, regard must be had to what is the *real front* of the property. This is
a question of fact, to be determined by the manner in which it was laid
out, or in which it has been built upon, and used and occupied by the
owner." (2.) "If a lot abuts lengthwise on the improvement, but fronts
breadthwise on another street, and not on the improvement, the lot should
be deemed as fronting breadthwise on the improvement, and be assessed
for the number of feet on the improvement that it would have in such case,
and *no more*." Judge MINSHALL, in stating the reasons for the judgment

of the court, construing the statute authorizing assessments upon the
" abutting * * * lots and lands * * * by the foot front of the
property bounding and abutting upon the improvement, manifests the
purpose in that construction of a breadthwise frontage to maintain equal-
ity in the assessment among those bearing the burden thereof, even to the
extent in equity of resorting to a fiction if necessary to work out justice
against the hard lines of the law.

In determining the question of feet in this case, as to what is the real
frontage, we must look to the shape of the platted lot, the streets upon
which it abuts, the use that has been made of the lot with regard to front-
age, and the manner in which it has been built upon—and in doing this,
the conclusion is inevitable that the use intended by the plan of subdivis-
ion was that the greater part of this property at least would be used for
frontage, either on Monroe or Ashland avenue, between the lines respect-
ively at right angles to or parallel with Monroe avenue.

The *actual* use is clearly in the latter manner. The building does not front at right angles to Ashland avenue; it fronts breadthwise between the lines as extended which would intersect Ashland avenue obliquely. The owners of the lots as improved can get no greater breadthwise frontage than the length of the base or rear line. The circumstance that a street line cuts his lot diagonally, and it therefore abuts on a longer line of the street, does not increase his breadthwise frontage, nor give him any more lot or building frontage. This lot is the one-half of a parallelogram, divided by the diagonal line A–B. Suppose the streets had been projected or laid out so that the defendant had a lot of uniform width, corner at C. B. D. or A. D. B., he would then have twice the size of lot, but with no more breadth, and if the building was located architecturally, and used as this one now is, he would have no more feet front to his lot, and under the Haviland case no more assessable frontage than the line B–D, the equivalent of A–C, the base line of this triangle.

Again, if we reverse the building, end for end, and have Ashland avenue along the line A–C, the lot would have the same breadthwise frontage as before, and, in such case, no one will question but that the assessment could only be upon the number of feet represented by the line A–C. The length of a diagonal line ordinarily represents a combination of front and side abutting feet. It is only otherwise when the use of the lot, the architectural frontage of the building, etc., modify its platted character. (This statement, however, if correct, may be so as an inferred fact, and we must look to the legislature to expressly fix the legal status of the abutting feet for assessable purposes. In an act supplementary to section 2293, the legislature did specify that for improvements thereunder, the front width, and not the diagonal line along the street, should be the assessable frontage; but this improvement is not under that act.)

Judge SAYLER, in *Reed* v. *City*, 31 Bull. 279, held the diagoal line the assessable frontage, because of the finding of fact that the "dwelling house was built and used with reference to Baltimore avenue" (the diagonal line). It was not a corner lot liable to assessment upon another abutting side. In that case the judge recognized that the "assessment worked out hardship," and stated "it would be difficult to determine the front of this lot if there were no improvements on it." It seems to me that the peculiar facts as to this triangular corner lot are reconcilable only with the finding of a breadthwise frontage to the length of the base line A–C. If I were authorized to make, in the construction of the statute, a frontage that would work out the most equitable assessment, it would be upon a line representing an average breadth of the lot according to the manner of using and improving it.

For reasons heretofore stated, the relief prayed for by plaintiffs will be granted to the extent of reducing the assessable frontage to the length of of the rear line, or greatest breadth of the lot. The assessment heretofore made by the village will be restrained perpetually, without prejudice to re-assessment according to the rule above stated.

*Edward Moulinier*, for plaintiff.
*Wm. E. Bundy*, for defendant.